Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 7218 | **DATE** | 12/5/2001 |
| **CASE TITLE** | George Berg vs. Robb Miller et al | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  **Enter MEMORANDUM, OPINION AND ORDER: We grant the motion [19-1] for summary judgment of defendants Robb Miller, Terry Mercer, Gary Bushnell, Derrick Moscardelli, Larry Ayers, and Arthur Look because plaintiff has failed to establish that defendants' conduct violated the First and Fourteenth Amendments to the Constitution and 42 U.S.C. Section 1983. Moreover, we find that defendants are entitled to qualified immunity for their actions. Therefore, judgment is granted in favor of the defendants. This is a final and appealable order.**
(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | DEC 0 6 2001 | |
| | Notified counsel by telephone. | | date docketed | 26 |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| ✓ | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| TSA | courtroom deputy's initials | 01 DEC -6 AM 8:12 Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GEORGE BERG,                                )
                                            )
                    Plaintiff,              )
                                            )   No. 99 C 7218
        v.                                  )
                                            )   Judge Wayne R. Andersen
ROBB MILLER, an Individual,                 )
TERRY MERCER, an Individual,                )
GARY BUSHNELL, an Individual,               )
DERRICK MOSCARDELLI, an                     )
Individual, LARRY AYERS, an                 )
Individual, and ARTHUR LOOK,                )
an Individual,                              )
                                            )
                    Defendants.             )

**DOCKETED**

DEC 0 6 2001

## MEMORANDUM OPINION AND ORDER

This case is before the Court on the motion of defendants, Robb Miller, Terry Mercer, Gary Bushnell, Derrick Moscardelli, Larry Ayers and Arthur Look for summary judgment pursuant to Fed.R.Civ.P. 56. For the following reasons, we grant the motion for summary judgment.

### BACKGROUND

Plaintiff, George Berg, is a former Public Aid Investigator II for the Office of the Inspector General ("OIG"), which operates within the Illinois Department of Public Aid ("IDPA"). Plaintiff began his employment with IDPA on February 14, 1975 and was discharged from this employment on December 4, 1998.

Defendant Robb Miller is the Inspector General of the IDPA. Defendant Terry Mercer is the Chief of the OIG's Bureau of Investigations ("BOI"), the Bureau for which plaintiff worked. Defendant Gary Bushnell is the OIG's Deputy Inspector General for Administration. Defendant

Derrick Moscardelli is the Chief of the OIG's Bureau of Internal Affairs ("BIA"). In this position, Moscardelli headed up the internal investigation of plaintiff that resulted in plaintiff's discharge. Defendant Larry Ayers is the Assistant Bureau Chief in OIG's Bureau of Internal Affairs. In this position, Ayers participated in the internal investigation of plaintiff that resulted in plaintiff's discharge. Defendant Arthur Look is an Internal Security Investigator II for the OIG's Bureau of Internal Affairs. In this position, Look was the lead investigator in the internal investigation of plaintiff that resulted in plaintiff's discharge.

At some point during plaintiff's employment with the IDPA, plaintiff's supervisor initiated a program in which the investigators under his command would rotate the responsibility for preparing an agenda for meetings. Every investigator shared the responsibility of preparing an agenda for these regularly scheduled investigators' meetings, when it was his or her turn. Under Pellicore's program, it was up to the individual investigator to plan where the meeting would be held and what was to be discussed during the meeting, but the investigator was supposed to ask the other investigators and Pellicore for input as to what topics would be discussed at the meeting.

Sometime prior to February 19, 1998, Pellicore asked plaintiff to plan an investigators' meeting. On February 25, 1998, plaintiff distributed an agenda for a meeting of public aid investigators scheduled to take place on March 25, 1998. In the agenda, plaintiff expressed criticism for the manner in which the agency performed certain tasks. Specifically, plaintiff criticized how the OIG's Bureau of Investigations: 1) closed investigation referrals in a wholesale manner and then solicited new referrals; 2) gave geographic work assignments to areas where investigators had already been assigned; 3) prioritized certain "pet" projects at the expense of the OIG's primary investigatory mandate; and 4) wasted time on unnecessary training.

In January, 1998, while on the job, plaintiff met a married woman who was working for the Illinois Department of Human Services ("IDHS") and who also happened to be a public aid recipient. On March 6, 1998, plaintiff obtained access to the IDHS offices for the purpose of viewing the woman's IDHS recipient case record. Plaintiff did not access the case record for any reason related to his work duties, and he did not ask the woman for permission to view her case record. The woman resigned from the IDHS at the end of March, 1998, and plaintiff began a romantic relationship with her in April, 1998.

On the morning of July 30, 1998, the woman's husband telephoned plaintiff at plaintiff's home and threatened him. Later that morning, plaintiff telephoned his supervisor's supervisor, Assistant Bureau of Investigations Chief Mickey Tinder, to report that the husband of a public aid recipient had threatened him. Plaintiff then reported the threat to the police. Plaintiff sent the following flier around to his neighbors:

> In my profession as a state fraud investigator, it is not uncommon for me to receive threats against my person. Usually, these are simply taken in stride as part of the job.
> Recently, however, I have received a consistent rash of threats from the same perpetrator.

The flier then contained a physical description of the woman's husband.

An IDPA internal investigation was then initiated to look into the threat and to protect plaintiff, an IDPA employee. During that investigation, it became clear that plaintiff did not receive the threat as the result of an investigation he was conducting, but as a result of events in his personal life. An investigation was then initiated against plaintiff.

The investigation was directed by defendant Derrick Moscardelli and defendant Larry Ayers and conducted by defendant Arthur Look. As part of that investigation, on or about September 25, 1998, plaintiff claims that defendants Moscardelli, Ayers and Look attempted to obtain false

3

statements from witnesses so that they could make a stronger case against plaintiff. On September 29, 1998, plaintiff submitted a two-page Inter-Office Memorandum to defendant Robb Miller, the Inspector General for the IDPA, presenting his side of the story and complaining that pressure had been applied to an administrator to write a false sworn statement against plaintiff.

On September 30, 1998, Look issued a report recommending disciplinary action against plaintiff for violating department rules. Plaintiff claims that, in the report, Look wrongly speculated about plaintiff's motivations for his actions, distorted facts and took facts out of context to make it appear that plaintiff had violated a policy or rule. Subsequently, on October 8, 1998, defendant Terry Mercer, Chief of the OIG's Bureau of Investigations, issued a recommendation for disciplinary action. Disciplinary action was recommended for plaintiff's misuse of state property, release of confidential agency records to unauthorized persons, misuse of computer systems, and violation of work rules regarding incompatible outside employment or interests.

A copy of the recommendation for disciplinary action was sent to plaintiff's union representative. On October 9, 1998, IDPA Inspector General Robb Miller sent a letter to plaintiff advising him that the information he provided is "under review." On October 22, 1998, plaintiff appeared at a pre-disciplinary conference and was given a copy of the charges against him.

On November 2, 1998, plaintiff's union faxed to Terry Mercer, Chief of the OIG's Bureau of Investigations, a two-page response to the Charges. Plaintiff argues that the manner in which his November 2, 1998 response to DPA's Charges was written and typed by his union representative constituted a due process violation because it was unprofessional.

On November 20, 1998, plaintiff's supervisor presented plaintiff with his annual evaluation. In this evaluation, plaintiff's supervisor found that plaintiff met only 2 of 5 objectives, that he

demonstrated a lack of judgment on occasion, and that the quantity of reports that plaintiff completed was not acceptable. Plaintiff grieved the evaluation to his supervisor, who denied it.

Within the OIG, Robb Miller is the person who makes the final decisions regarding recommending discipline in serious cases. Miller instructed Terry Mercer to review the BIA's Report of Investigation and make a disciplinary recommendation in consultation with Keller and Bushnell. Mercer, Bushnell and Keller all reviewed the BIA's Report of Investigation and concluded that plaintiff's actions constituted dischargeable conduct. They made a disciplinary recommendation to Miller that plaintiff be discharged, and Miller agreed.

CMS is the final arbiter on discharge for State of Illinois employees. On December 3, 1998, CMS Director Michael Schwartz signed the CMS 2 form and initialed a document entitled "CHARGES." CMS' Charges detailed the case against plaintiff and concluded that his conduct was unbecoming of a state employee and constituted a breach of the public trust. On December 4, 1998, CMS notified plaintiff of its "official approval of charges" by the Director of CMS. On that same date, CMS discharged plaintiff from his IDPA employment for cause.

On December 16, 1998, the union sent a letter to plaintiff, advising him that he could challenge his discharge in one of two ways: by filing a grievance with IDPA or through the Illinois Civil Service Commission. Plaintiff chose to file a grievance. On December 16, 1998, plaintiff filed a "Contract Grievance" with CMS, alleging that he was discharged without just cause.

On February 5, 1999, IDPA's Labor Relations Bureau conducted plaintiff's third level grievance hearing and, on February 8, 1999, denied plaintiff's grievance. IDPA found that plaintiff's discharge was warranted due to the severity of plaintiff's actions. On February 26, 1999, plaintiff

5

sent a twelve-page letter to his union for the purpose of preparing for the fourth level grievance. Step four grievances are handled by CMS, and an employee may submit information and evidence.

On March 9, 1999, IDPA sent a memorandum to CMS, in which it recommended that plaintiff's discharge be upheld at the fourth level. On March 24, 1999, a "Resolution Prior to Arbitration" was signed by a union representative and a representative from CMS in which they agreed that plaintiff would resign by April 15, 1999, that plaintiff would not seek further employment with IDPA, and that plaintiff would not pursue any litigation arising out of the discharge. If plaintiff did not provide a written resignation, then he would be considered discharged.

Plaintiff did not provide a written resignation by April 15, 1998. On April 28, 1999, plaintiff filed charges of discrimination with the EEOC, asserting that he was discriminated against by IDPA because of his age. On August 11, 1999, the EEOC issued a Dismissal and a Notice of Rights of Charge to plaintiff.

On November 5, 1999, plaintiff filed a pro se complaint against IDPA in this Court alleging that he was discriminated against by IDPA because of his age pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq. On January 11, 2000, the United States Supreme Court issued it opinion in Kimel v. Florida Board of Regents, 528 U.S. 62 (2000), which found that the ADEA does not properly abrogate a State's Eleventh Amendment immunity and, therefore, ADEA actions cannot be maintained against states in federal court.

On February 7, 2000, plaintiff filed the instant amended complaint, naming for the first time the six individual defendants and dropping the ADEA violation claim. In his amended complaint, plaintiff asserts for the first time that his February 19, 1998 agenda distribution was a precipitating factor in causing his discharge and that the defendants denied him due process. Specifically, plaintiff

6

alleges that defendants acted under color of state law in retaliating against him for speaking out on matters of public importance and depriving him of his position without due process of law. Plaintiff alleges that defendants' conduct violated the First and Fourteenth Amendments to the Constitution and 42 U.S.C. § 1983.

## DISCUSSION

Summary judgment will be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court will not render summary judgment if a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The mere possibility of a factual dispute is not enough to defeat a summary judgment motion. Id. at 250; Waidridge v. American Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994).

I. Due Process

In his amended complaint, plaintiff alleges that each of the six defendants deprived him of his employment position without due process of law in violation of the Fourteenth Amendment and 42 U.S.C. §1983. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Matthews v. Eldridge, 424 U.S. 319, 333 (1976). The specific procedures appropriate to a given situation vary, depending on three distinct factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

7

Eldridge, 424 U.S. at 335.

The Supreme Court has applied the Eldridge standard to analyze the type of pre-termination procedures the due process clause guarantees to a public employee who can be discharged only for cause. Cleveland Bd. of Education v. Loudermill, 470 U.S. 532, 542-43 (1985). In this case, both sides agree that plaintiff is an employee who can be discharged only for cause in his position as a certified PA Investigator II. The Loudermill Court held that "a tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." Loudermill, 470 U.S. at 546.

Illinois follows a process that satisfies the Loudermill requirements. The Illinois Personnel Code authorizes the State to promulgate rules for its employees that have the force and effect of law. 20 ILCS 415/8. The Illinois Personnel Rules state, in relevant part, that:

> Before an agency shall . . . bring charges for discharge against any certified employee, that agency shall apprise the employee of the basis for such action and provide the employee an opportunity to respond to the charges in accordance with the following standards:
> a) The agency will notify the employee in writing of the intended discharge . . .
> b) A statement of charges in support of the proposed action . . . shall be given to the employee, including the name of any known witness and a copy of any document pertinent to the charges.
> c) The employee shall have 5 scheduled working days after receipt of the charges and prior to the effective date of the . . . discharge in which to respond to them orally or in writing.
> d) The employee is entitled to representation in any meeting . . . through the collective bargaining representative. . .
> e) the employee shall remain in paid status . . .
> f) The employee or the employee's representative shall be permitted access to a designated area or a secure area of the work place to investigate the charges and, upon request, be provided a copy of other pertinent documents.

80 Ill. Admin. Code § 302.705. The union contract that covered plaintiff contained similar guarantees.

A. <u>Pre-Discharge Due Process</u>

In this case, plaintiff fails to show that any defendant denied him due process before his discharge. To the contrary, plaintiff admits that: 1) he was notified of the charges against him; 2) he was given a copy of the charges and a document pertinent to the charges (the IA Investigation Report, that contained the names of all witnesses); 3) he responded to these charges in writing; 4) he had union representation throughout; and 5) he was paid until his discharge. The only pre-discharge due process violation that plaintiff identifies is the way his response to IDPA's Charges was written and typed by his union representative, which he perceived to be unprofessional. Plaintiff admits, however, that no defendant influenced the union's preparation of his "unprofessional" response, and the union is not a defendant here. Therefore, plaintiff has failed to establish that he was deprived of due process by defendants prior to his discharge.

B. <u>Post-Discharge Due Process</u>

Likewise, plaintiff fails to show that any defendant deprived him of due process after his discharge. Plaintiff's union advised him that he could challenge his discharge in one of two ways: by filing a grievance with IDPA, or by appealing to the ICSC. Plaintiff chose to forgo the ICSC route and instead filed a grievance with the IDPA.

During the IDPA grievance proceedings, plaintiff had numerous opportunities to respond to the charges against him. Plaintiff responded to the charges by filing a Contract Grievance on December 16, 1998. Plaintiff had another opportunity to present his version of events at his February 5, 1999 third-level grievance hearing, which he attended telephonically and during which testimony and arguments were received. On February 26, 1999, plaintiff had yet another opportunity

9

to tell his side of the story when he submitted a 12 page letter to his union in preparation for his fourth-level hearing.

Subsequent to the third-level hearing and the submission of the letter in preparation for the fourth-level hearing, plaintiff's union representatives decided to forgo the fourth-level hearing and negotiated a voluntary resignation settlement for plaintiff. Plaintiff's dissatisfaction with his union representation, however, fails to establish that any defendant prevented him from telling his side of the story.

Plaintiff also claims that he was denied due process by the defendants because he was not given his choice of representation. Plaintiff voluntarily chose to challenge his discharge through the grievance procedure set forth in the union contract. Under his chosen procedure, plaintiff could have retained non-union representation at his own expense because the grievance provisions of the union contract do not contain an exclusive representation clause. However, plaintiff chose to have the union represent him.

Significantly, plaintiff does not claim that any defendant interfered with his choice of procedure or representation. Given the record in this case, plaintiff cannot establish that any defendant is liable for the way that his chosen union representatives handled his post-termination remedies. See Thomsen v. Romeis, 198 F.3d 1022, 1029 (7th Cir. 2000). Thus, the record establishes that plaintiff received notice of the charges against him, an explanation of the employer's evidence against him, and he had an opportunity to present his side of the story. Therefore, plaintiff has failed to establish a due process violation against defendants, and summary judgment is granted in favor of defendants on plaintiff's due process claims.

## II. First Amendment

In his amended complaint, plaintiff alleges that each of the six defendants retaliated against him for speaking out on matters of public importance in violation of the First Amendment and 42 U.S.C. § 1983. In the Seventh Circuit "[a] claim under § 1983 for retaliation in violation of the First Amendment requires a three-step analysis. First, the court must determine whether the plaintiff's speech was constitutionally protected. If so, then the plaintiff must prove that the defendant's actions were motivated by the plaintiff's constitutionally protected speech. Finally, if plaintiff can demonstrate that his constitutionally protected speech was a substantial or motivating factor in the defendant's actions, the defendant is given the opportunity to demonstrate that it would have taken the same action in the absence of the plaintiff's exercise of his rights under the First Amendment." Kokkinis v. Ivkovich, 185 F.3d 840, 843 (7th Cir. 1999).

In this case, plaintiff claims that he spoke out on a matter of public importance through his February 25, 1998 distribution of an agenda for a meeting of IDPA investigators that he alleges angered Robb Miller and his administration. Defendants argue that plaintiff's First Amendment claim fails because the agenda is not constitutionally protected, the agenda was not a motivating factor in defendants' actions, and defendants would have taken the same actions even if the distribution of the agenda had never occurred.

We believe it is a close question as to whether the speech contained in the agenda is protected by the First Amendment. Plaintiff presents some arguments to show that he was speaking out on matters of public importance. However, even assuming that the agenda is constitutionally protected speech, it is clear from the record that plaintiff cannot meet either the second or third prong of the test. The record shows that the agenda was not a motivating factor in the defendants' actions and

11

that defendants would have taken the same actions even if the distribution of the agenda had never occurred.

### A. Plaintiff's Meeting Agenda Did Not Motivate His Discharge

A plaintiff must show that the protected speech was a substantial or motivating factor in the adverse job action. Mt. Healthy v. Doyle, 461 U.S. 274, 287 (1977); Kokkinis v. Ivkovich, 185 F.3d 840, 843 (7th Cir. 1999). Here, plaintiff failed to present any credible evidence to show that any defendant knew about the meeting agenda at any time before plaintiff's discharge. Rather, the record shows that none of defendants was aware of the agenda at the time of plaintiff's discharge.

The record amply demonstrates that plaintiff caused his own downfall by choosing to telephone a supervisor to report that a "husband of a client" had threatened him while he was off duty. This telephone call triggered an almost immediate response from Robb Miller, who directed his Bureau of Internal Affairs staff to reach out and assist plaintiff "in any way possible." Miller was concerned for plaintiff's safety after hearing the report of plaintiff's seemingly work-related problem. The Bureau of Internal Affairs immediately contacted plaintiff. Upon learning that plaintiff's initial report was not completely true and was misleading and that plaintiff was in fact having a sexual affair with the wife of the man who had threatened him, the focus of the investigation turned toward plaintiff himself. This investigation uncovered other actions by plaintiff that also violated IDPA's personnel rules.

There is nothing in the record to connect plaintiff's February 1998 meeting agenda to any of defendants' actions regarding his discharge. The BIA Report of Investigation of plaintiff covered 71 pages, without a single mention of the agenda. The agenda was not mentioned in any of the documents supporting the discipline sought against plaintiff. Plaintiff's own two-page response to

the charges against him fails to mention the agenda as being a precipitating factor in causing any of defendants' actions towards him. Likewise, plaintiff failed to mention the agenda throughout the entire course of his post-discharge proceedings. Finally, plaintiff's original complaint in this Court, in which he alleged that his discharge was as a result of age discrimination, also failed to mention the agenda.

In Barkoo v. Melby, 901 F.2d 613 (7th Cir. 1990), the Court found that the plaintiff failed to recognize her speech as a contributing factor to any disciplinary action taken against her by the defendants by not raising it in her initial complaint. The Court further pointed out that "the issue seems to have taken on greater importance because it is the only justification for [plaintiff's] presence in federal court." 901 F.2d at 620. Similarly here, plaintiff's First Amendment issue arose for the first time only after the Supreme Court foreclosed ADEA claims against States in Kimel v. Florida Board of Regents, 528 U.S. 62 (2000).

The record shows that plaintiff chose to take a series of actions that were violations of IDPA personnel rules. Plaintiff was given every opportunity to defend himself against these charges, and he failed to convince anyone. Not once, until the filing of his amended complaint, did he ever allege that his agenda was the real factor behind the discharge. Plaintiff therefore fails to meet his burden of showing that his allegedly protected speech was a motivating factor in his discharge.

B. Plaintiff Would Have Been Discharged For His Actions Regardless Of His Agenda

Plaintiff was discharged for specific personnel rules violations. The record clearly establishes that plaintiff's violative conduct was unrelated to, and wholly independent of, his February 1998 meeting agenda. Therefore, the record establishes that the plaintiff would have been discharged for his actions regardless of the speech contained in his agenda.

For all of these reasons, plaintiff's First Amendment and § 1983 claims fail, and summary judgment is granted in favor of defendants.

III. Qualified Immunity

State officials "performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1981). The law presumes immunity for public officials acting in their personal capacities. Hidahl v. Gilpin Co., 938 F.2d 1150, 1155 (10th Cir. 1991). The qualified immunity defense "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). The "contours of the right [that a defendant allegedly violated] must be sufficiently clear that a reasonable official would understand that what he is doing violates that right ... the lawfulness must be apparent." Anderson v. Crighton, 483 U.S. 635, 640 (1987). Accordingly, the threshold question is whether plaintiff has presented facts to show that defendants engaged in conduct that violated his rights. See Saucier v. Katz, 121 S. Ct. 2151, 2156 (2001).

The respective contours of plaintiff's First and Fourteenth Amendment rights are clear. A government employee has a right to freedom of speech in the workplace, and a tenured public employee is entitled to certain pre- and post- discharge processes. See Pickering, 391 U.S. at 568; Loudermill, 470 U.S. at 542-46. Plaintiff, however, has failed to show that any defendant violated any of his rights. Rather, the record establishes that none of defendants was even aware of plaintiff's agenda and that the agenda did not motivate any of defendants' actions. Moreover, the record establishes that none of plaintiff's pre- and post- discharge processes were violated by defendants.

Thus, plaintiff has failed to meet his burden of showing that defendants reasonably knew that they were violating any of plaintiff's constitutional rights in their roles as investigators and decision-makers in their decision to discharge plaintiff. Plaintiff has also failed to show any evidence that any defendants acted in concert to deprive plaintiff of any rights. Plaintiff's failure to meet this burden entitles defendants to qualified immunity from plaintiff's claims.

## CONCLUSION

For the foregoing reasons, we grant the motion for summary judgment of defendants Robb Miller, Terry Mercer, Gary Bushnell, Derrick Moscardelli, Larry Ayers, and Arthur Look because plaintiff has failed to establish that defendants' conduct violated the First and Fourteenth Amendments to the Constitution and 42 U.S.C. § 1983. Moreover, we find that defendants are entitled to qualified immunity for their actions. Therefore, judgment is granted in favor of the defendants.

This is a final and appealable order.

_____
Wayne R. Andersen
United States District Judge

Dated: December 5, 2001